IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DAVID ALAN CARMICHAEL,
    *Pro se* Plaintiff,

v.                                                              Civil Action No. 3:13CV129

KATHLEEN SEBELIUS, *in her official
capacity as Secretary, U.S. Department of Health
and Human Services*,

COMMONWEALTH OF VIRGINIA *and its officers
named acting in their official capacity under the
color of State law*,

and

CAROLYN W. COLVIN, *in her official capacity
as Acting Commissioner, U.S. Social Security
Administration*,
    Defendants.

## MEMORANDUM OPINION

This case is the latest skirmish in a long-running effort by the plaintiff to get rid of his social security number. The *pro se* plaintiff, David Alan Carmichael ("Carmichael"), has filed a nine count complaint against various governmental entities and officials. His suit arises from 42 U.S.C. § 666(a)(13), a statute requiring each state to record the social security number ("SSN") of any applicant for a driver's license in order for the state to receive certain federal funds for child support enforcement efforts. This matter now comes before the Court on the defendants' motions to dismiss. (Dk. Nos. 4 and 9.)[1]

---

[1] Carmichael has filed a number of motions. Three of his motions request a hearing on the defendants' motions to dismiss. (Dk. Nos. 20, 25, and 27.) A fourth motion asks the "Court to grant or deny previous motions for hearing." (Dk. No. 28.) The Court DENIES these motions

For the reasons discussed below, the Court GRANTS the defendants' motions to dismiss (Dk. Nos. 4 and 9) and DISMISSES the case. Accordingly, the Court DENIES Carmichael's motion for partial summary judgment as MOOT. (Dk. No. 12.)

## I. <u>STATEMENT OF FACTS</u>

Title 42 of the U.S. Code § 666 outlines procedures to improve the effectiveness of child support enforcement. 42 U.S.C. § 666. This code section is part of the Social Security Act, as amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. "To qualify for various federal welfare funds, states must certify that they will operate a child support enforcement program that conforms to [this Act]." *Champion v. Sec'y of State*, 761 N.W.2d 747, 751 (Mich. Ct. App. 2008). The specific provision that Carmichael challenges, § 666(a)(13)(A), conditions a state's receipt of the funds on the state collecting and recording the SSN of "any applicant for a professional license, driver's license, occupational license, recreational license, or marriage license." *Id.*

Carmichael serves as a minister of the gospel and "overseer" of a Christian ministry. He believes that a SSN is "the number of the Beast." (Compl. ¶ 18.) The "number of the Beast" refers to the Book of Revelations, 13:16–18. This passage warns against the Beast, and indicates that the Beast will have a number. Most theologians consider the Beast to be the Antichrist, and

---

because oral argument will not aid in the decisional process. The plaintiff has also filed "Plaintiff's Motion to Amend Typographical Errors in July 5th Document 'Plaintiff Response to Defendant Commonwealth of Virginia Motion to Dismiss.'" (Dk. No. 26.) While the Court certainly appreciates filings free of typographical errors, and commends the plaintiff for his attempt to correct them, the Court DENIES this motion because the requested edits would not affect the Court's decision. Finally, the plaintiff has filed a partial motion for summary judgment. (Dk. No. 12.) The Court DENIES the partial motion for summary judgment as moot because the Court dismisses the case.

the Beast's number to be 666.[2] *See* Jack Zavada, *Mark of the Beast*, About.com, http://christianity.about.com/od/endtimestopicalstudy/a/Mark-Of-The-Beast.htm (last visited October 21, 2013).

Since 1996, Carmichael has worked to "disassociate" his identity from his SSN. In 2001, the Department of Motor Vehicles ("DMV") sent Carmichael a pre-printed driver's license renewal application, which included his SSN. Carmichael returned the application with a request that the DMV purge his SSN from his records, based on his religious beliefs. The DMV denied Carmichael's request. Carmichael then sent his expired driver's license to the DMV asking them to cancel it.

Carmichael continued to drive without a driver's license. At a safety checkpoint, a police officer ticketed Carmichael for driving without a license. Despite Carmichael's attempt to challenge the ticket, the state traffic court convicted Carmichael of driving without a license and fined him fifty dollars.

Carmichael wrote numerous requests to various state officials, including the governor, DMV Commissioner, and Secretary of Transportation, requesting that the DMV purge its records of his SSN. The responses from the Commonwealth consistently reiterate the DMV's response to Carmichael's initial request: "DMV does not have the authority to remove [your SSN] from your DMV records unless . . . you are able to provide a statement from the Social Security Administration or a court order stating that the [SSN] does not belong to you, nor has ever been associated with you." (Compl. ¶ 37.)

In 2008, Carmichael filed an action in the Circuit Court for the City of Richmond against the various state officers who had responded to his requests. The Honorable Margaret Spencer

---

[2] It is apparently pure coincidence that Carmichael challenges 42 U.S.C. § 666.

presided over the case. Judge Spencer dismissed all claims with prejudice. (*See* Dk. No. 24.) The Virginia Court of Appeals denied Carmichael's appeal as untimely.

Eventually, Carmichael filed his complaint in this Court on March 1, 2013, adding Judge Spencer, as well as Secretary Sebelius and Commissioner Colvin, as defendants.

## II. STANDARD OF REVIEW

The federal defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).

To survive a motion to dismiss, however, a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, in other words, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). Although the Court must accept as true all well-pleaded factual allegations, the Court need not accept legal

conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

While courts should liberally construe *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The court need not attempt "to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Fourth Circuit has stated: "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett*, 775 F.2d at 1276. In other words, "[d]istrict judges are not mind readers." *Id.* at 1278. Further, "[i]t is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal." *Harris v. Angliker*, Nos. 91-7118, 91-7120, and 91-7620, 1992 WL 21375, at *1 (4th Cir. Feb. 10, 1992) (unpublished opinion) (citations omitted).

The state defendants also seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction. In considering Rule 12(b)(1) motions, "courts must 'assume[] all facts in the complaint are true, thus providing the plaintiff with the same procedural protections as a Rule 12(b)(6) determination.'" *Carter v. Arlington Pub. Sch. Sys.*, 82 F. Supp. 2d 561, 564 (E.D. Va. 2000) (quoting *Lane v. David P. Jacobson & Co.*, 880 F. Supp. 1091, 1094 (E.D. Va. 1995)). When deciding a 12(b)(1) motion, "courts may consider evidence outside of the complaint to resolve factual disputes concerning jurisdiction without converting the motion into one for summary judgment." *Id.*

## III. ANALYSIS

Carmichael's complaint is not always clear either as to what he actually claims in each count or which defendants Carmichael asserts each count against. Generally, Carmichael appears to raise one set of claims against the federal defendants and a different set against the state defendants.[3] One claim is unintelligible.[4] The Court will discuss each set of claims in turn.

*A. Claims Against the Federal Defendants*

The claims against the federal defendants include: (1) violation of the Tenth Amendment (Count I);[5] (2) violation of the Free Exercise Clause of the First Amendment (Counts III[6] and VII); and (3) violation of the Religious Freedom Restoration Act ("RFRA") (Count V).

---

[3] Carmichael names as a defendant the "Commonwealth of Virginia and its officers named herein acting in their official capacity under the color of State law." (Compl. at 1.) Because the Court finds no value in taking the time to require Carmichael to amend his complaint naming the correct defendants, the Court will construe the complaint to name the following state officers as defendants in addition to the Commonwealth itself: "then Governor Tim Kaine, Transportation Secretary Pierce R. Homer, Attorney General Robert F. McDonnell, Attorney General Bill Mims, Assistant Attorney General Nicole Gillam, Department of Motor Vehicles Commissioner D.B. Smit, [and] Judge Margaret Spencer." (Compl. at 2.) Kaine, Homer, McDonnell, and Smit were parties in Carmichael's prior state court action. (Dk. No. 10-1, at 1.) The Honorable Margaret Spencer presided over the state court action. Other than to name them as defendants, Carmichael does not mention Mims or Gilliam elsewhere in his complaint; accordingly, the Court DISMISSES all claims against Mims and Gilliam.

[4] Additionally, Count IX, "Case in Equity," does not qualify as a cause of action in itself, but simply restates the nature of Carmichael's complaint. Thus, the Court will discuss only the claims made in Counts I – VIII.

[5] Carmichael argues that Count I "certainly applies to Defendant Virginia" because "[b]oth Virginia and the United States are in concert violating the separation of powers doctrine as it relates to 42 USC 666 and its provisions." (Dk. No. 23, Pl.'s Mem. Opp'n 6.) Because Carmichael argues that the federal statute, 42 U.S.C. § 666(a)(13) "is unlawful and void" (Compl. at 24), the federal government can be the only perpetrator of the alleged violation—not the state government for simply not challenging this provision. (Dk. No. 23, Pl.'s Mem. Opp'n 6–8.)

[6] Carmichael argues that Count III "certainly applies to Defendant Virginia" because "Virginia and its officers acting under the color of State law cannot do Congress' unlawful bidding under the guise that they got paid to do it." (Dk. No. 23, Pl.'s Mem. Opp'n 8.) Once again, the alleged violation can only relate to a violation by the federal government. In any event, the reasons to dismiss Count III as to the federal defendants apply with equal force to the state defendants.

*1. Tenth Amendment Claim*

Carmichael seems to allege that 42 U.S.C. § 666(a)(13) violates the Tenth Amendment because it conditions the receipt of certain federal funds on the states' compliance with the code section at issue. Section 666(a)(13) requires states to record the SSN of all driver's license applicants in order to receive federal funds.

The Tenth Amendment states: "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. In drafting the Constitution, "the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States." *New York v. United States*, 505 U.S. 144, 166 (1992). "[The Supreme Court has] always understood that even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Id.* Congress, however, can encourage states to conform to federal policy choices as long as "the residents of the State retain the ultimate decision as to whether or not the State will comply." *Id.* at 168. Congress cannot, however, encourage states to conform when "pressure turns into compulsion." *South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)).

The Fourth Circuit has held, in a challenge to the Social Security Act, 42 U.S.C. §§ 651–69, the very same act that Carmichael challenges, that the Act's "conditions are not so overbearing as to create an unconstitutional compulsion." *Hodges v. Thompson*, 311 F.3d 316, 318, 320 (4th Cir. 2002); *see also West Virginia v. U.S. Dep't of Health & Human Servs.*, 289 F.3d 281, 291–92 (4th Cir. 2002) (finding that the requirement that states adopt estate recovery programs or lose all or part of their federal Medicaid reimbursements did not violate the Tenth

7

Amendment); *accord Kansas v. United States*, 214 F.3d 1196, 1203 (10th Cir. 2000) (stating that the conditions imposed on a state's acceptance of funding under the Temporary Assistance to Needy Families Program and Child Support Enforcement Program were not impermissibly coercive). Additionally, in a challenge to the exact provision that Carmichael challenges, 42 U.S.C. § 666(a)(13), the Western District of Michigan found that no compulsion or coercion existed, stating that "Michigan has a free choice whether to comply with the requirement that it collect SSNs on drivers' license applications and receive federal funds or not." *Mich. Dep't of State v. United States*, 166 F. Supp. 2d 1228, 1236 (W.D. Mich. 2001).

Carmichael cites no law to refute these authorities. The Court, therefore, grants the defendants' motion to dismiss for failure to state a claim regarding a violation of the Tenth Amendment.

### 2. First Amendment Claims

Carmichael argues that § 666(a)(13) violates his free exercise of religion. He says:

> [§ 666(a)(13)] requires [him] to forsake [his] religion or suffer the penalty of having to choose between abandoning [his] civil capacities, privileges and immunities regarding the exercise of a profession, occupation, recreation, marriage, and the use of an automobile on public highways, or choose to risk financial penalty or jail should [he] exercise those capacities and rights without first forsaking [his] Christian religion.

(Compl. at 25.) Carmichael also alleges that § 666(d) unconstitutionally provides a waiver provision "only to a State and not to any people under the authority of United States Law." (Compl. at 28.)

The First Amendment states, in relevant part, that "Congress shall make no laws respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "[W]hen a plaintiff challenges an apparently neutral law of general applicability as

violative of the First Amendment, it must demonstrate that the statute targets its religious beliefs or practices." *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013) (emphasis omitted); *see also Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 881 (1990) (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring in judgment) ("[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'").

When analyzing the constitutionality of SSNs, the Supreme Court has held that "[t]he statutory requirement that applicants provide a Social Security number is wholly neutral in religious terms and uniformly applicable." *Bowen v. Roy*, 476 U.S. 693, 703 (1986) (plurality opinion). Additionally, in a factually similar case to the one at hand, the Western District of North Carolina has held, and the Fourth Circuit has affirmed, that

> Petitioners' religious beliefs—whatever they may be—do not excuse them from complying with the State's requirement of disclosure of a SS number prior to obtaining a drivers license. This requirement is valid and neutral—all applicants are required to provide such documentation. Furthermore, the non-use of a SS number is not a "deep religious conviction, shared by an organized group, and intimately related to daily living." *United States v. Bales*, 813 F.2d 1289, 1297 (4th Cir.1987) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972)). Rather, "[i]t is more on the order of a 'philosophical and personal' belief, which does not garner protection under the first amendment." *Id.*

*N.C. ex rel. Kasler v. Howard*, 323 F. Supp. 2d 675, 680 (W.D.N.C. 2003) *aff'd sub nom. Kasler v. Howard*, 78 F. App'x 231 (4th Cir. 2003).

Section 666(a)(13) is a neutral and generally applicable statute. The statutory requirement applies to all states seeking federal funds for child support enforcement. Additionally, the statute requires recordation of the SSN of "*any* applicant for a professional

license, driver's license, occupational license, recreational license, or marriage license." 42 U.S.C. § 666(a)(13)(A) (emphasis added). Carmichael has cited no contrary authority to support a claim that § 666(a)(13) violates the Free Exercise Clause.

Carmichael also argues that § 666(d) violates the Free Exercise Clause because it provides a waiver "only to a State and not to any people." (Compl. at 28.) As an initial matter, the Court cannot even construct an argument on how this section violates Carmichael's ability to freely exercise his religion. Even if an argument existed, however, § 666(d) is certainly neutral and generally applicable. Additionally, it makes logical sense that Secretary Sebelius can only exempt a state rather than an individual from compliance with the requirements. The exemption looks at the effectiveness of the state's entire child support enforcement system; an individual could not evaluate the state's entire system effectively. Further, allowing a waiver for each individual who disagrees with the SSN requirement would completely undermine the child support enforcement system nationwide. Accordingly, the Court finds that Carmichael has failed to state a claim that § 666(d) violates the Free Exercise Clause.

### 3. RFRA Claim

While Carmichael discusses violations of his religious freedom throughout his complaint, he cites to RFRA, 42 U.S.C. § 2000bb, only in Count V. He argues that the state court's finding that RFRA "does not mitigate those laws of Congress of specific or general applicability relating to federal social welfare benefit program . . . is starkly logically erroneous and needs to be declared erroneous." (Compl. at 27.) While this allegation does not appear to assert anything against the federal defendants and relates to the state court adjudication, the Court will briefly discuss the applicability of RFRA to § 666(a)(13) to the extent that Count V asserts a claim against the federal defendants.

In *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997), the Supreme Court declared RFRA unconstitutional when applied to state and local laws because it exceeded Congress's enforcement power under § 5 of the Fourteenth Amendment. RFRA, however, continues to apply to federal laws. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 n.1 (2006). Section 2000bb-1 establishes that

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability . . . [unless] it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1. Thus, a RFRA analysis begins with determining "whether a substantial burden has been imposed on the exercise of sincerely-held religious beliefs." *Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995).

"[A] 'substantial burden' is one that 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Indep. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). A substantial burden also exists if the law "forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (internal alterations and citations omitted); *cf. Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) ("An inconsequential or *de minimis* burden on religious practice does not rise to this level, nor does a burden on activity unimportant to the adherent's religious scheme.").

Carmichael fails to allege a substantial burden on his religion from the SSN requirement. Indeed, Carmichael seems to allege only burdens on his secular life, such as his ability to drive his car, rather than to exercise his religion. The D.C. Circuit encountered a similar case in which

a prisoner objected to the Bureau of Prisons taking and storing his DNA in compliance with federal law. *Id.* The *Kaemmerling* Court concluded that "Kaemmerling does not allege facts sufficient to state a substantial burden on his religious exercise because he cannot identify any 'exercise' which is the subject of the burden to which he objects." *Id.* at 679. Further, "[t]he government's extraction, analysis, and storage of Kaemmerling's DNA information does not call for Kaemmerling to modify his religious behavior in any way—it involves no action or forbearance on his part, nor does it otherwise interfere with any religious act in which he engages." *Id.* Similarly, Carmichael alleges no religious "exercise" or "act" that § 666(a)(13) inhibits.

Accordingly, the Court finds that § 666(a)(13) does not substantially burden Carmichael's exercise of religion as required by RFRA.[7] Thus, Carmichael has failed to state a valid RFRA claim for relief.

### B. Claims Against the State Defendants

Counts II, V, VI, and VIII attempt to assert claims against the state defendants. The *Rooker-Feldman* doctrine bars Carmichael from bringing Counts II, V, and VIII, and res judicata bars Count VI.

### 1. The Rooker-Feldman *Doctrine*

The *Rooker-Feldman* doctrine serves as a jurisdictional bar to a federal district court's review of a state court judgment. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983);

---

[7] Because Carmichael fails to sufficiently plead a substantial burden to the exercise of his religion, the Court need not address whether § 666(a)(13) furthers a compelling government interest by the least restrictive means. Nonetheless, other courts that have persuasively reasoned that the collection of child support is a compelling government interest and that the use of SSNs is the least restrictive means of furthering that interest. *See, e.g., Champion*, 761 N.W.2d at 754–56; *State v. Loudon*, 857 S.W.2d 878, 882 (Tenn. Crim. App. 1993). If the Court needed to address these issues, it would follow these cases.

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "District courts cannot review final state court judgments because Congress has vested appellate jurisdiction over state court decisions with the United States Supreme Court." *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007) (citing 28 U.S.C. § 1257(a)). As explained by the Supreme Court, the *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The controlling question in a *Rooker-Feldman* analysis "is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997)).

Although Carmichael words Counts II, V, and VIII as against "state officers," the substance of these counts clarifies that he really challenges the ruling of Judge Spencer in *Carmichael v. Commonwealth*, No. CL08-2067. For example, in Counts II and VIII, Carmichael asserts that "[t]he ruling and order by the State officer judge named herein, acting under the color of office was arbitrary, capricious and hurt me in my quest to hold State officers accountable to State law, and to recover damages property [sic]." (Compl. at 25, 30.) Similarly, in Count V, Carmichael states that "the State argued and the State officer Defendant judge sustained" an argument that he labels as "starkly logically erroneous." (Compl. at 27.)

Looking no further than Carmichael's complaint, the Court finds that Carmichael challenges the state court decision in Counts II, V, and VIII. In Count II, he asks the Court to "check" Judge Spencer's "policy" in making an "arbitrary [and] capricious" decision in Carmichael's "quest to hold State officers accountable to State law." (Compl. at 25.) The same

13

language appears in Count VIII. (*See* Compl. at 30.) In these counts, Carmichael asks this Court to directly review Judge Spencer's state court decision. Because this Court does not have appellate jurisdiction over state court judgments in light of the *Rooker-Feldman* doctrine, the Court dismisses Counts II and VIII.

In Count V, Carmichael states that the act of Judge Spencer in sustaining the Commonwealth's argument regarding RFRA during the state court case "is starkly logically erroneous and needs to be declared erroneous." (Compl. at 27.) Under *Rooker-Feldman*, this Court does not have jurisdiction to review the merits of Judge Spencer's decisions. Accordingly, the Court also dismisses Count V.

*2. Res Judicata*

The doctrine of res judicata essentially states that a litigant only gets one bite at the apple to try a case. "When considering the preclusive effect in federal court of a state-court judgment, federal courts must apply the law of the state rendering the judgment." *St. Louis Univ. v. United States*, 5 F. App'x 133, 138 (4th Cir. 2001) (citing 28 U.S.C. § 1738).

> Under Virginia law, to establish res judicata, the defendants must show: (1) that the prior judgment is a final and valid judgment; (2) that the parties are identical or are in privity with each other; and (3) that the claim made in the subsequent lawsuit arises out or relates to the same occurrence, conduct, or transaction upon which the prior lawsuit was based.

*Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011) (citing *Martin–Bangura v. Commonwealth Dep't of Mental Health*, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009)).

First, Judge Spencer's orders dismissing Carmichael's state case (Dk. No. 24) addressed the merits of his claim. Carmichael appealed Judge Spencer's decision to the Virginia Court of Appeals, which denied his appeal. (Compl. ¶ 48.) Thus, the state court judgment serves as a

final and valid judgment. *Cf. Willner v. Frey*, 421 F. Supp. 2d 913, 921 (E.D. Va. 2006), *aff'd*, 243 F. App'x 744 (4th Cir. 2007) (noting that Virginia is "among those states that do not afford preclusive effect to a judgment when the judgment is the subject of a *pending* appeal") (emphasis added).

Second, Carmichael brings Count VI against the state defendants who did not grant Carmichael's request to purge his SSN from his driver's license record. Based on the facts alleged in the complaint, the state defendants who meet this criterion include Kaine, Homer, and Smit. Carmichael alleges that in denying his request, these defendants "clung to the administrative directive Code of Virginia 46.2-323 driver's license application administrative innovation . . . [and] turned the authority structure of law topsy-turvy." (Compl. at 27.) In his state court case, Carmichael sued Kaine, Homer, Smit, and McDonnell. The parties sued in Count VI, therefore, are identical to the defendants in Carmichael's state court proceeding.

Third, Carmichael's claim in Count VI relates to the same occurrence upon which he based his state court proceeding—the officers' denial of Carmichael's request to apply for a driver's license without providing his SSN. Specifically, in his complaint to this Court, Carmichael alleges violation of the "Code of Virginia 57-1, 57-2, 57-2.02; several sections of the Virginia Constitution, especially Article I, Section 16; the U.S. Constitution, especially the First Amendment; and common, natural and divine law." (Compl. at 27.) Looking to Carmichael's state court complaint, his second, third, and fourth causes of action question the exact same provisions. (Dk. No. 10-1, at 22–25.)

The two cases—the state case and the instant case—meet each requirement for establishing res judicata. Carmichael had his bite of the apple when he sued in state court.

15

Accordingly, res judicata bars him from relitigating the same issue in federal court. Thus, the Court dismisses Count VI.

### C. The Unintelligible Claim

Federal Rule of Civil Procedure Rule 8 requires a pleader to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Count IV of Carmichael's complaint does not conform to this rule. The Court has generously construed Carmichael's complaint as required for *pro se* plaintiffs, but, as the Fourth Circuit acknowledged in *Beaudett*, "[d]istrict judges are not mind readers." 775 F.2d at 1278.

In Count IV, Carmichael seems to ask the Court to declare that "State positive and fundamental law" preempts 42 U.S.C. § 666(a)(13). He argues the assertion that § 666(a)(13) preempts state law "is a grievous falsehood perpetuated in several States[,] but especially by the Defendants named herein." (Compl. at 26.) To the extent that Carmichael is asking this Court to review Judge Spencer's state court judgment, the *Rooker-Feldman* doctrine bars Count IV. *See supra* section III(B)(1). To the extent that Carmichael wishes the Court to evaluate § 666(a)(13) as violating his religious freedom, Carmichael has not alleged that § 666(a)(13) "substantially burdens" religion in order to qualify him for protection. *See supra* section III(A)(3); *see also* Va. Code § 57-2.02(B) (tracking language of RFRA stating that the government shall not "substantially burden a person's free exercise of religion"). Lastly, to the extent that Carmichael hopes the Court will discuss preemption, the Court does not understand how preemption would apply because § 666(a)(13) does not conflict with any of the (very general) laws cited by Carmichael. Moreover, the principle of preemption provides that federal law trumps state law, not vice versa as Carmichael claims. *See Black's Law Dictionary* (9th ed. 2009) (defining preemption as "the principle (derived from the Supremacy Clause) that a federal

law can supersede or supplant any inconsistent state law or regulation"). Accordingly, the Court dismisses Count IV for failure to state a claim.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss, denies the plaintiff's motion for partial summary judgment as MOOT, and DISMISSES the case.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and via U.S. mail to the *pro se* plaintiff.

Date: October 23, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge